USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/2/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEVEN JIMENEZ,

                    Plaintiff,

   -against-

SGT. LASHLEY, SGT. BOYD, and C.O. MAHON,

                  Defendants.

No. 23-CV-628 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

*Pro se* Plaintiff, Steven Jimenez ("Plaintiff"), brings this action under 42 U.S.C. § 1983, asserting claims of excessive use of force, conspiracy to violate his civil rights, and deliberate indifference in violation of the Eighth Amendment. (*See* Amended Complaint ("Amend. Compl.", ECF No. 27.) Plaintiff sues staff members employed by the New York State Department of Corrections and Community Supervision at Green Haven Correctional Facilities ("Green Haven"), including Segreant Lashley, Sergeant Boyd, and C.O. Mahon (collectively, the "Defendants").

Pursuant to Federal Rules of Civil Procedure 12(b)(6), the Defendants have moved to dismiss the Amended Complaint. ("Motion", ECF No. 32.) For the following reasons, Defendants' Motion is GRANTED in part and DENIED in part.

**PROCEDURAL HISTORY**

On January 20, 2023, Plaintiff filed the original Complaint. (ECF No. 2.) On December 26, 2023, Plaintiff filed an Amended Complaint. (ECF No. 27.) The Amended Complaint is the operative complaint. Defendants filed this Motion on May 17, 2024. (ECF No. 32), as well as a memorandum of law ("Defs.' MoL.", ECF No. 33). On August 23, 2024, Defendants filed their reply (ECF No. 43), in support thereof. On August 23, 2024, Plaintiff filed an opposition to Defs.' MoL. ("Pltf.'s Opp.", ECF No. 42.)

**FACTUAL BACKGROUND**

On October 27, 2022, Plaintiff was sitting in the mess hall at Green Haven when he was directed to move his seat next to someone that Plaintiff believed had COVID-19. (Pltf.'s Opp. at 29.) Plaintiff refused this command from an unidentified correctional officer, which she then reported to Sergeant Lashley. (*Id*.) According to Plaintiff, Sergeant Lashley then spoke with C.O. Mahon while they both looked at Plaintiff. (*Id*. at 30.) After this exchange, C.O. Mahon singled Plaintiff out of the line leaving the mess hall. (Amend. Compl. at 1.) C.O. Mahon waited outside the mess hall for Plaintiff to exit and Sergeant Lashley followed. (Pltf.'s Opp. at 29.) As Plaintiff exited the mess hall, C.O. Mahon told him to turn around and place his hands on the wall as he conducted a pat frisk. (*Id*.) After the frisk, Plaintiff was instructed to face the officers when Sergeant Lashley asked Plaintiff if he had a "problem" with him (*Id*.) Before Plaintiff could respond, Sergeant Lashley punched Plaintiff in the face causing him to fall back and hit his head on a bench that was behind him. (Pltf.'s Opp. at 12.) As a result, Plaintiff sustained a black eye, a fractured jaw, and a bruise on his lower back. (*Id*. at 13.) Plaintiff also claims that he now suffers from "paranoid disorders." (*Id*. at 3.)

Following this incident, none of the officers offered to bring Plaintiff to the medical unit for treatment and instead instructed him to return to his cell. (Amend. Compl. at 2.) Plaintiff further alleges that he attempted to get medical treatment multiple times but was denied by various corrections officers and staff. (Amend. Compl. at 2) Plaintiff eventually made his way to the medical unit for treatment later that night. (*Id*.) During his intake, the nurse who was attending to him began to write an incident report detailing his injuries and what happened. (*Id*.) Plaintiff alleges that when he stated that he was assaulted by Sergeant Lashley, the nurse told Plaintiff that

this would have to be reported to the watch commander. (*Id.*) Moments later, Sergeant Lashley, Sergeant Boyd, and C.O. Mahon entered the medical unit and told the nurse not to file an incident report. (*Id.*) According to Plaintiff, Sergeant Lashley and C.O. Mahon then told Plaintiff that he was "starting something that [he] can't finish." (*Id.*) Sergeant Lashley and C.O. Mahon then proceeded to make several threats to Plaintiff which included sending him to the Special Housing Unit ("SHU"), getting other prisoners to attack him, and adding a new charge to his record. (*Id.*) Plaintiff alleges that he asked to go back to his cell because he felt intimidated by the officers. (*Id.*) Following this incident, Plaintiff did not receive medical attention again for another ten days when he was sent to an outside hospital for treatment. (Pltf.'s Opp. at 32.) Plaintiff alleges that Defendants made sure he did not receive medical attention following his assault and initial intake at the medical unit. (*Id.* at 31.)

## LEGAL STANDARDS

### A.  Rule 12(b)(6) Motion to Dismiss Standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether a complaint states a claim upon which relief can be granted, the court "begins by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Where the well-pleaded facts do not permit the court

to infer more than the mere possibility of misconduct, the complaint has alleged, but has not shown that the pleader is entitled to relief. *Id.*

*Pro se* complaints, however, are held to less stringent standards than those drafted by lawyers. *Thomas v. Westchester County*, 2013 WL 3357171 (S.D.N.Y. July 3, 2013). Because of this a *pro se* party's pleadings should be read, "to raise the strongest arguments that they suggest." *Id.* at 2. Applying the pleading rules permissively is especially appropriate when *pro se* plaintiffs allege civil rights violations. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Even in a *pro se* case, however, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d. Cir. 2010) (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a *pro se* plaintiff's] complaint supports, [it] cannot invent factual allegations that [a *pro se* plaintiff] has not pled." *Id.* A court may, however, "consider new facts raised in opposition papers to the extent that they are consistent with the complaint, treating the new factual allegations as amending the original complaint." *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013).

### B.  42 U.S.C. § 1983 Claims

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121,

4

127 (2d Cir. 2010). To state a claim under Section 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

## DISCUSSION

Plaintiff's Amended Complaint asserts claims sounding in alleged Eighth Amendment violations. Specifically, Plaintiff alleges excessive use of force, conspiracy to violate his civil rights, and deliberate indifference. In their Motion, Defendants assert that Plaintiff has failed to state a plausible claim and that qualified immunity applies. The Court will discuss each claim in turn.

### Excessive Use of Force

The Eighth Amendment protects prisoners from excessive force. *See Whitley v. Albers*, 475 U.S. 312, 318 (1986). Though not every governmental action affecting the interests or well-being of a prisoner will implicate Eighth Amendment protection, "unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment forbidden by the Constitution. *Id*. at 319. (citation omitted) In this Circuit, to determine an excessive force claim in violation of the Eighth Amendment, courts apply a two-step analysis: (1) a subjective analysis of the defendant's motive for his conduct; and (2) an objective analysis focusing on the conduct's effect. *See Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009). The subjective analysis focuses on whether the defendant's conduct was wanton. *Id*. The question of what constitutes "wantonness" turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically to cause harm." *Whitley,* 475 U.S. at 320. The objective analysis focuses on the

harm done measured against "contemporary standards of decency." *Wright*, 554 F.3d at 268

(quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). When prison officials use force to cause

harm maliciously and sadistically, contemporary standards are always violated. *Id*. at 269.

Here, Plaintiff alleges that he was singled out as he was leaving the mess hall where he

was then subjected to a pat frisk. (Amend. Compl. at 1.) As soon as the frisk was completed, he

was ordered to turn around and was then punched in the face by Sergeant Lashley. (*Id*.) There is

no indication from the Amended Complaint or from Defendants that Plaintiff refused to comply

with the search, refused an order to return to his cell, used force against Sergeant Lashley, or that

Plaintiff struck an aggressive posture toward Sergeant Lashley or the other officers. As alleged,

the force used against Plaintiff was entirely gratuitous and without justification. Courts have held

that, at the motion to dismiss stage, absent evidence that the Plaintiff was uncooperative or

threatening, force cannot be said to have been applied in good faith to restore discipline. *See*

*Banks v. Cty. of Westchester*, 168 F.Supp 3d 682, 691 (S.D.N.Y. 2016) (citation omitted). And

that force that is "gratuitous … is unreasonable and therefore excessive." *Tracy v. Freshwater*,

623 F.3d 90, 99 n.5 (2d Cir. 2010). Accordingly, Plaintiff has plausibly pled facts that satisfy the

subject element of an excessive force claim.

Defendants argue that the objective element cannot be met because "Lashley punched

Plaintiff one time, even the malevolent punch itself is a *de minimis* use of physical force."

(Defs.' MoL. at 11.) The Court disagrees. In *Hudson v. McMillian*, the Supreme Court held that

blows, which caused "bruises, swelling, loosened teeth, and a cracked dental plate are not *de*

*minimis* for Eighth Amendment purposes." 503 U.S. 1, 10 (1992). Here, Plaintiff alleges nearly

identical injuries to those in *Hudson*—e.g., bruising, swelling, a black eye, and a fractured jaw.

(Pltf.'s Opp. at 13.) Following *Hudson*, courts in this Circuit have regularly found that such

injuries are not *de minimis*. *See Atkins v. Cnty. of Orange*, 372 F. Supp. 2d 377 (S.D.N.Y. 2005) (finding that injuries consisting of severe shoulder pain for three to five days was not *de minimis*); *Evering v. Rielly*, No. 98 Civ. 6718, 2001 WL 1150318, at *6 (S.D.N.Y. Sept.28, 2001) (concluding that bruising, back pain, soreness and redness in vaginal area, and knife wound on right arm were not *de minimis* as a matter of law); *Griffin v. Crippen*, 193 F.3d 89, 92 (2d Cir. 1999) (holding that a bruised shin and swollen knee were not *de minimis* injuries). Accordingly, Plaintiff has plausibly pled facts that satisfy the objective element of an excessive force claim.

### Conspiracy

Plaintiff alleges that Defendants conspired to violate his civil rights. A Section 1983 conspiracy requires a plaintiff to show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. *See Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (citation omitted). "Conspiracies are by their very nature secretive operations, and may have to be proven by circumstantial, rather than direct, evidence." *Id*. (quoting *Rounseville v. Zahl*, 13 F.3d 625, 632 (2d Cir. 1994)). Courts generally give great leeway to a pleader since all the relevant information may not be known or available to him at the time of the pleading. *See Maersk, Inc. v. Neewra, Inc.*, 554 F. Supp. 2d 424, 458 (S.D.N.Y. 2008). At the motion to dismiss stage, a pleader need only "provide some factual basis supporting a meeting of the minds, such as that defendants entered into an agreement, express or tacit, to achieve the unlawful end, augmented by some details of time and place and the alleged effects of the conspiracy." *Romer v. Morgenthau*, 119 F.Supp.2d 346, 363 (S.D.N.Y. 2000) (citation and quotation marks omitted).

In support of his conspiracy claim, Plaintiff primarily relies on the exchange between Sergeant Lashley and C.O. Mahon who spoke to each other in the mess hall while looking at Plaintiff before singling him out for the pat frisk and subsequent assault. (Pltf.'s Opp. at 30.) Construing the *pro se* complaint broadly and to raise the strongest arguments that it suggests, and with great leeway, this is sufficient to plausibly plead conspiracy. First, Plaintiff has identified a potential agreement between two state actors—Sergeant Lashley and C.O. Mahon—who spoke to each while staring at the Plaintiff who had just refused an order from another correctional officer. This provides enough of a factual basis that there was a "meeting of the minds" between these two defendants. Second, immediately following this exchange, Plaintiff was singled out by C.O. Mahon for a pat frisk as he was leaving the mess hall, where Sergeant Lashley followed close behind Plaintiff as he made his exit. C.O. Mahon conducted the frisk as Sergeant Lashley took position next to C.O. Mahon and then struck Plaintiff after he was instructed to turn around. As discussed *supra*, this blow was excessive force in violation of Plaintiff's Constitutional rights. Further, Plaintiff's description of Sergeant Lashley and C.O. Mahon's actions and movements suggest planned coordination between the two officers in singling out Plaintiff and confronting him in tandem. This provides sufficient facts to plausibly allege that Sergeant Lashley and C.O. Mahon were acting in concert. Third, the acts of Sergeant Lashley and C.O. Mahon to single out Plaintiff and corner him from the rest of the general population to assault him sufficiently indicates an overt act in furtherance of their conspiracy. As Plaintiff alleges in the Amended Complaint, there is sufficient factual basis to support a meeting of the minds, to achieve the unlawful end, along with details of the time, place, and effects of the conspiracy. Accordingly, Plaintiff has sufficiently pled a Section 1983 conspiracy.

**Deliberate Indifference**

*A. Medical Needs*

The Eighth Amendment's protection from cruel and unusual punishment extends to deliberate indifference to the serious medical needs of prisoners. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The deliberate indifference standard has two prongs: (1) an objective prong that measures if the "alleged deprivation of adequate medical care [was] sufficiently serious"; and (2) a subjective prong that measures if "the charged official [acted] with a sufficiently culpable mind." *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006). The objective prong is divided into two inquiries. First, whether the prisoner was "actually deprived of adequate medical care." *Id*. at 279. Second, whether the inadequacy was "sufficiently serious." *Id*. at 280. The subjective prong requires a finding of "a mental state equivalent to subjective recklessness as the term is used in criminal law." *Id*. The official must know of and disregard an excessive risk to inmate health or safety. *See Sledge v. Fein*, No. 11 CIV. 7450 PKC, 2013 WL 1288183, at *5 (S.D.N.Y. Mar. 28, 2013) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Plaintiff alleges that Defendants intentionally prevented him from receiving medical treatment. (Amend. Compl. at 2.) First, immediately after Plaintiff was struck by Sergeant Lashley, he was directed to go back to his cell instead of being taken to the medical unit. (*Id*.) Second, following his assault, Plaintiff was able to begin medical treatment at Green Haven's medical unit, but it was interrupted by Sergeant Lashley, Sergeant Boyd, and C.O. Mahon. (*Id*.) Defendants intimidated Plaintiff into going back to his cell instead of continuing medical treatment and filing an incident report documenting the assault. (*Id*.) Plaintiff received medical attention ten days after the assault when he was sent to an outside hospital for treatment. (Pltf.'s Opp. at 32.) As a result, Plaintiff cannot allege that he was *completely* denied medical treatment

only that his medical treatment was delayed. In these situations, the proper inquiry is not necessarily the injury itself but the effects of the delayed treatment and how that delay worsened Plaintiff's medical condition. *See Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003). Here, Plaintiff has not pled facts that show that the delay worsened his medical condition or that other sufficiently harmful effects occurred as a result. *See Chance v. Armstrong*, 143 F.3d 698, 702-03 (2d Cir.1998) (finding that inadequate dental treatment spanning six months that resulted in extreme pain, tooth deterioration, and inability to eat properly was a sufficiently serious effect of the delay to survive a motion to dismiss); *Hathaway v. Coughlin*, 841 F.2d 48, 50–51 (2d Cir. 1988) (determining that a two-year delay in surgery to correct broken pins in hip that caused Plaintiff extreme prolonged pain was a sufficiently serious effect). Moreover, Plaintiff has not alleged a sufficiently serious medical need. *See Ruffino v. Gomez*, No. 3:05–CV–1209 (JCH), 2006 WL 3248570, at *7–8 (D.Conn. Nov. 8, 2006) (finding that bruises, scrapes and scratches treated with antibiotic ointment did not rise to the level of a "serious medical need"); *Ford v. Phillips*, No. 05 Civ. 6646 (NRB), 2007 WL 946703, at *12 (S.D.N.Y. Mar. 27, 2007) (holding that abrasions, a minor bruise, slight bleeding and scratches are not sufficiently serious); *Chatin v. Artuz*, 28 Fed.Appx. 9, 10–11 (2d Cir. 2001) (concluding that a sprained ankle, a bone spur, and a neuroma, did not rise to the level of seriousness that the Eighth Amendment requires). Accordingly, Plaintiff has not plausibly pled deliberate indifference in violation of the Eighth Amendment.

## B. Failure to Protect

"The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dep't. of Corrs.*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Prison

officials may be held liable under Section 1983 for failing to protect an inmate from conditions posing a substantial risk of serious harm. *See Farmer*, 511 U.S. at 836. Failure to protect claims are analyzed in two-steps: (1) "the plaintiff must demonstrate that he is incarcerated under conditions posing a substantial risk of serious harm"; and (2) "the plaintiff must demonstrate that the defendant prison officials possessed sufficient culpable intent." *Hayes*, 84 F.3d at 620. The second prong requires a finding that the prison official had sufficient culpable intent in that he had knowledge of a substantial risk of serious harm and that he disregarded that risk by failing to take reasonable measures to abate that harm. *Id.*

Plaintiff alleges that Sergeant Boyd "failed to do his job to tell Defendant Lashley to leave the area and make an … incident report and get … Plaintiff medical treatment." (Amend. Compl. at 3.) By this allegation, the Court understands Plaintiff to be asserting a "failure to protect" claim pursuant to the Eighth Amendment. This claim fails.

First, it is not clear that Plaintiff was facing "a substantial risk of serious harm" from Sergeant Lashley and C.O. Mahon such that Sergeant Boyd was obligated to take action to protect Plaintiff. "In deliberate indifference cases involving a defendants failure to act to protect another against a risk of physical harm, the defendant's subjective awareness of a high degree of risk must be shown; the need for action must be 'plainly obvious' and the harmful consequence of inaction 'highly predictable.'" *J.V. v. Lake*, No. 23-CV-3419 (CS), 2024 WL 3236823, at *6 (S.D.N.Y. June 28, 2024) (citations omitted). Plaintiff does not plead facts that indicate that there was a pattern or history of violence between him and Sergeant Lashley outside of the case here, which was reported as a single isolated incident. Absent facts to this effect, it cannot be said to be "plainly obvious" and "highly predictable" that there would be subsequent attacks on

Plaintiff. *See Manning v. Griffin*, No. 15-CV-3, 2016 WL 1274588, at *10-11 (S.D.N.Y. Mar. 31, 2016).

Injuries that are sufficiently severe may constitute a "substantial risk of serious harm" where "(1) the prisoner sustained serious injuries as a result of an altercation …, and (2) the prisoner was the victim of an undisputedly unprovoked attack." *Gordon v. Drummond*, No. 19CIV8405GBDGWG, 2022 WL 884971, at *5 (S.D.N.Y. Mar. 25, 2022) (cleaned up). As alleged, Plaintiff suffered from a single blow to the face from which he sustained several injuries—namely, a black eye, fractured jaw, bruising, and swelling. (Pltf.'s Opp. at 13.) Plaintiff alleges that this attack was unprovoked and that he was punched for "no reason at all." (Amend. Compl. at 1.) This satisfies the second prong. But in the context of "failure to protect" claims, "serious harm" has been characterized as when the victim was punched, kicked, and stomped on by a gang of "Bloods" until he was unconscious and bleeding. *See Gordon*, 2022 WL 884971, at *4. Consider, too, *House v. City of New York*, No. 18CIV6693PAEKNF, 2020 WL 6891830, at *13 (S.D.N.Y. Nov. 24, 2020). There, the victim suffered several serious injuries after being jumped by three inmates including a fracture to his right eye socket, a skull fracture, and a nose fracture, necessitating a surgery. Or *Knowles v. New York City Dep't of Corr.*, 904 F. Supp. 217, 221 (S.D.N.Y. 1995) where the victim was unexpectedly slashed across his face, which required sixty stitches to close. The Court is aware of one case where a broken jaw was found to be a sufficiently serious injury, but that case is distinguishable on its facts. *See Johnson v. Gagnon*, No. 914CV00916MADDEP, 2016 WL 11480160 (N.D.N.Y. Aug. 29, 2016). There, the plaintiff was placed in restraints and assaulted by multiple corrections officers leading to a broken jaw and a wound that required stitches. Here, the Plaintiff was not restrained and was not assaulted by multiple officers and his injuries did not require stitches or surgery. Moreover, the proper

inquiry is not the injury itself but the existence of a substantial risk of harm. *See See Pitt v. Cnty. of Rockland*, No. 22 CV 8356 (VB), 2024 WL 691145, at *4 (S.D.N.Y. Feb. 20, 2024). The Court does not believe that an isolated incident of a single strike from a corrections officer created a substantial risk of harm that was "highly predictable" and "plainly obvious." Accordingly, Plaintiff's injuries are not sufficiently seriousness.

Second, Plaintiff does not allege that there were any subsequent attacks such that Sergeant Boyd could be said to have failed to take reasonable measures to abate harm to Plaintiff. Plaintiff alleges that Sergeant Lashley made threats that he was "starting something I can't finish." (Amend. Compl. at 2.) But the Amended Complaint stops there. There are no further allegations that Sergeant Lashley made good on these threats and that any attacks or harm came to Plaintiff at the hands of Sergeant Lashley. Plaintiff only alleges that Sergeant Lashley interrupted his medical treatment, but it was ultimately the Plaintiff who asked to be sent back to his cell without continuing. (Amend. Compl. at 3.) Sergeant Boyd's failure to secure the Plaintiff medical treatment cannot be said to qualify as disregard for a substantial risk of serious harm. As discussed, Plaintiff's injuries, though not *de minimis*, were also primarily superficial and the delay in medical treatment from Sergeant Lashley did not pose a serious or life-threatening risk. Accordingly, Plaintiff has failed to state a failure to protect claim.

### C.  Failure to Intervene

It is well-settled that "law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (collecting cases). "Failure to intercede results in liability where an officer observes excessive force is being used or has reason to know that it will be." *Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001).

13

To establish liability, a plaintiff must prove the use of excessive force by someone other than the defendant, and that: "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citation omitted).

According to Plaintiff, his assault was motivated by a refusal to comply with an order in the mess hall. (Pltf.'s Opp. at 29.) After his refusal, C.O. Mahon and Sergeant Lashley spoke to each other while looking at Plaintiff. (*Id*. at 30.) Plaintiff contends that C.O. Mahon and Sergeant Lashley's conversation in the mess hall was an agreement between them to assault Plaintiff. (Pltf.'s Opp. at 29.) Taking Plaintiff's allegations as true, as the Court must, C.O. Mahon had knowledge of Sergeant Lashley's plan to assault Plaintiff when they spoke to each other in the mess hall. At that time, C.O. Mahon could have intervened to convince Sergeant Lashley not to assault Plaintiff. Or later, once C.O. Mahon and Sergeant Lashley had cornered Plaintiff outside of the mess hall and subjected Plaintiff to a pat frisk, C.O. Mahon could have also intervened then to stop Sergeant Lashley from striking Plaintiff. To the extent there is any dispute about whether C.O. Mahon had a reasonable opportunity to intercede given the brief nature of the assault, this is an issue of fact for the jury. *See Anderson*, 17 F.3d at 558. As discussed *supra*, the use of gratuitous force is a clear violation of Plaintiff's constitutional rights. Sergeant Lashley would have known that and yet he failed to take reasonable steps to prevent its use. Accordingly, Plaintiff has plausibly pled a failure to intervene claim.

**<u>Qualified Immunity</u>**

Qualified immunity protects government officials from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights that a reasonable

person would be aware of. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine if

qualified immunity applies, a court considers: "(1) whether the plaintiff has shown facts making

out violation of a constitutional right; (2) if so, whether that right was clearly established at time

of defendant's alleged misconduct; (3) even if the right was clearly established, whether it was

objectively reasonable for the officer to believe the conduct at issue was lawful." *Taravella v.

Town of Wolcott*, 599 F.3d 129, 133-34 (2d Cir. 2010). But if officers of reasonable competence

could disagree on whether the conduct at issue was lawful, qualified immunity applies. *See

Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007) (citing *Malley v. Briggs*, 475 U.S. 335, 341

(1986)).

  As discussed *supra*, Plaintiff has shown facts making out a violation of a constitutional

right—excessive force.  Further, it is undeniable that freedom from excessive force is a clearly

established constitutional right. *See Russo v. City of Bridgeport*, 479 F.3d 196, 212 (2d Cir.);

*Atkins v. Cnty. of Orange*, 372 F. Supp. 2d 377, 401 (S.D.N.Y. 2005). It stretches the

imagination to conclude that an officer who was faced with an inmate who had not refused to

comply with a search, had not refused an order to return to his cell, had not used force against the

officer, and had not struck an aggressive posture toward the officer would believe that use of

force would have been lawful against him. Moreover, the Second Circuit has held that a

defendant asserting a qualified immunity defense at the motion to dismiss stage will face a

"formidable hurdle." *McKenna v. Wright*, 386 F.3d 432, 434 (2d Cir. 2004); *see also Jacobs v.

City of Chicago*, 215 F.3d 758, 775 (7th Cir. 2000) (Easterbrook, J., concurring in part)

(concluding that a motion to dismiss "is a mismatch for immunity and almost always a bad

ground of dismissal"). To succeed, it must appear "beyond [a] doubt that the plaintiff can prove

no set of facts in support of his claim that would entitle him to relief." *Id*. (quoting *Citibank, N.A.*

*v. K–H Corp.*, 968 F.2d 1489, 1494 (2d Cir. 1992). With this guidance, the Court cannot say at this stage that there are no facts that would entitle Plaintiff to relief. Accordingly, the Court finds that qualified immunity does not apply.

**Leave to Amend**

The Second Circuit has advised that "a *pro se* plaintiff who is proceeding *in forma pauperis* should be afforded the same opportunity as a *pro se* fee-paid plaintiff to amend his complaint prior to its dismissal for failure to state a claim, unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 796 (2d Cir.1999) (per curiam). Accordingly, the Court dismisses Plaintiff's deliberate indifference claim related to his medical needs as well as his claims asserting a failure to protect, with leave to amend.

## CONCLUSION

For the foregoing reasons, the Defendants' motion to dismiss the Amended Complaint is GRANTED in part and DENIED in part. Defendants' motion is GRANTED without prejudice with respect to Plaintiff's deliberate indifference and failure to protect claims. Defendants' motion is DENIED with respect to Plaintiff's excessive force, conspiracy, and failure to intervene claims.

Plaintiff is granted leave to file a Second Amended Complaint by January 6, 2025 as to any claims that have not been dismissed with prejudice. Plaintiff is advised that the Second Amended Complaint will replace, not supplement, the First Amended Complaint, and so any claims that she wishes to pursue must be included in, or attached to, the Second Amended Complaint. Should Plaintiff file a Second Amended Complaint, the Defendants are directed to answer or otherwise respond by February 6, 2025, and the parties are directed to confer, complete and file a Case Management Plan and Scheduling Order (blank form attached) by March 10, 2025. If Plaintiff

fails to file a Second Amended Complaint within the time allowed, those claims that were dismissed without prejudice shall be deemed dismissed with prejudice. If no Second Amended Complaint is timely filed, Defendants are directed to file an answer on or before February 6, 2025, and the parties are directed to complete and file a Case Management Plan and Scheduling Order by March 10, 2025.

The Clerk of Court is kindly directed to terminate the motion at ECF No. 32, mail a copy of this Opinion to *pro se* Plaintiff at Plaintiff's address as it is listed on ECF, and to show service on the docket.

Dated: December 2, 2024                                    SO ORDERED:
White Plains, New York

NELSON S. ROMÁN
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.


-against-

_____

_____

_____

Write the full name of each defendant. If you cannot fit the
names of all of the defendants in the space provided, please
write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The
names listed above must be identical to those contained in
Section IV.

_____CV_____

(Include case number if one has been
assigned)

**AMENDED
COMPLAINT**
(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

---

## I.    LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.    PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

First Name                Middle Initial              Last Name

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

Current Place of Detention

Institutional Address

County, City                         State                  Zip Code

## III.    PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other: _____

## IV.    DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 2:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 3:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 4:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

## V.    STATEMENT OF CLAIM

Place(s) of occurrence: _____


Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

## VII.    PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Prison Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing: _____

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

Rev. Jan. 2012

-------------------------------------------------------------x

                                        **CIVIL CASE DISCOVERY PLAN**

                    Plaintiff(s),        **AND SCHEDULING ORDER**

    - against -


                    Defendant(s).        _____ CV _____ (NSR)


-------------------------------------------------------------x


 This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):


1.    All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c).  The parties are free to withhold consent without adverse substantive consequences.  (If all parties consent, the remaining paragraphs of this form need not be completed.)


2.    This case [is] [is not] to be tried to a jury.


3.    Joinder of additional parties must be accomplished by _____.


4.    Amended pleadings may be filed until _____.

5.      Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter.  The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6.      First request for production of documents, if any, shall be served no later than _____.

7.      Non-expert depositions shall be completed by _____.

        a.      Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

        b.      Depositions shall proceed concurrently.

        c.      Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.

8.      Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.      Requests to Admit, if any, shall be served no later than _____.

10.     Expert reports shall be served no later than _____.

11.     Rebuttal expert reports shall be served no later than _____.

12.     Expert depositions shall be completed by _____.

13.     Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14.     **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15.     Any motions shall be filed in accordance with the Court's Individual Practices.

16.     This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17.     The Magistrate Judge assigned to this case is the Hon. _____.

18.     If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19.     The next case management conference is scheduled for _____, at _____.  (The Court will set this date at the initial conference.)

SO ORDERED.

Dated:  White Plains, New York

      _____

                                    _____

                                    Nelson S. Román, U.S. District Judge